FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Sep 18, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jonathan B.[1],

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No. 4:17-CV-05139-EFS

**ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

**CLERK'S OFFICE ACTION REQUIRED**

Before the Court are the parties' cross motions for summary judgment, ECF Nos. 12 & 14. Plaintiff Jonathan B. appeals a denial of benefits by the Administrative Law Judge (ALJ). ECF No. 12. He alleges the ALJ erred by (1) improperly rejecting the opinions of his school psychologist and teachers; (2) rejecting lay witness testimony; (3) rejecting Plaintiff's subjective complaints; (4) finding that he did not meet a listing; (5) failing in his step five analysis; and (6) failing to grant child disability benefits from November 21, 2012 through December 13, 2013. ECF No. 12 at 2. The Commissioner of Social Security (Commissioner) asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. ECF No. 14 at 20–21.

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* proposed draft of LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.

After reviewing the record and relevant authority, the Court grants the Commissioner's motion for summary judgment, ECF No. 14, and denies Plaintiff's motion for summary judgment, ECF No. 12.

## I.   Factual and Procedural Summary[2]

Plaintiff was born on December 13, 1994, and is 23 years old. Administrative Record (AR) 30. At the time of the hearing, he lived with his grandmother. AR 44. He asserts that he has a history of Autism/Asperger's syndrome.[3] ECF No. 12 at 2. The ALJ concluded that Plaintiff suffers from learning and affective disorders, but not Autism or Asperger's syndrome. AR 23. Plaintiff participated in the special education program in high school and graduated in January of 2016. AR 45. He has never had a paying job. AR 43-45. His hobbies include creating YouTube videos and videogames, playing the guitar, playing videogames, and going to church with friends. AR 25. He has also participated in some volunteer activities. AR 25-26, 43-44, 514.

Plaintiff filed an application for Supplemental Security Income (SSI) on November 21, 2012, alleging disability beginning on December 1, 1997. AR 20. His claim was denied initially and upon reconsideration. AR 20. A video hearing was held on March 22, 2016, before Administrative Law Judge Tom L. Morris. AR 31.

---

[2]   The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.
[3]   Plaintiff's motion for summary judgment uses this phrasing: "Autism/Asberger's" syndrome. *E.g.*, ECF No. 12 at 2.

1    At step one,[4] the ALJ determined that Plaintiff had not engaged

2    in substantial gainful activity since December 13, 2012, the

3    application date. AR 22-23.

4    At step two, the ALJ concluded that Plaintiff had the following

5    medically determinable severe impairments: learning disorder and

6    affective disorder. AR 23. The ALJ also concluded that Plaintiff's

7    Auitism/Asperger's syndrome is no longer a severe impairment. AR 23.

8    At step three, the ALJ found that Plaintiff did not have an

9    impairment or combination of impairments that meets or medically equals

10   the severity of one of the listed impairments. AR at 23-24.

11   At step four, the ALJ found that Plaintiff had the residual

12   functional capacity to perform a full range of work at all exertion

13   levels, with several non-exertional limitations: Plaintiff is capable

14   of performing unskilled work tasks, understanding and recalling simple

15   routine tasks, and can have occasional contact with co-workers and

16   changes in the work environment; his work should have an emphasis on

17   dealing with things and objects rather than people; he can do no work

18   performed at production rates, but he can perform goal-oriented work;

19   and he is off-task about 10% over the course of a workday. AR 24.

20   In reaching these conclusions, the ALJ found that Plaintiff's

21   medically determinable impairments could reasonably be expected to

22   cause the alleged symptoms. AR 25. However, the ALJ also concluded that

23   claimant's statements concerning the intensity, persistence and

24

25   [4] The applicable five-step disability determination process is set forth in
     the ALJ's decision, AR 20-21, and the Court presumes the parties are well
26   acquainted with that standard process. As such, the Court does not restate
     the five-step process in this order.

limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 25.

In determining Plaintiff's RFC, the ALJ gave significant weight to the opinions of Dr. Thomas Genthe, examining psychologist and Dr. Anita Peterson, the state agency medical consultant. AR 26–27. The ALJ gave limited weight to the opinions of Plaintiff's teachers, Elizabeth Burgess, Laurie Price, and Mike Greif. AR 27–29. The ALJ also gave limited weight to the opinions of Plaintiff's friend, mother, and grandmother. AR 27–29. No weight was given to the opinion of Dr. Grant Gilbert, because the opinion was dated when the claimant was a child. AR at 29. The ALJ gave limited weight to an individualized education plan (IEP) report from Plaintiff's high school from November 3, 2015, and no weight to an IEP report dated from before Plaintiff turned 18. AR 28.

At step five, the ALJ found Plaintiff had no past relevant work and that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 30–31.

The ALJ issued an unfavorable decision on June 14, 2016. AR 31. The Appeals Council denied Plaintiff's request for review, AR 1–6, and he timely appealed to this Court. ECF No. 1.

## II.  Standard of Review

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is

not supported by substantial evidence or is based on legal error."[5] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6]

It is the role of the ALJ, not this Court, to weigh conflicting evidence and make credibility assessments. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."[7] Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."[8] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[9] The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.[10]

### III. <u>Applicable Law & Analysis</u>

**A.  The ALJ Did Not Commit Error in Assigning Little Weight to the Opinions of Dr. Withers, Ms. Price, Ms. Burgess, and Mr. Grief.**

Plaintiff argues that the ALJ failed to adequately consider the opinions of Dr. Angela Withers, Laurie Price, Elizabeth Burgess, and Mike Grief. ECF No. 12 at 6–12. The Court concludes the ALJ's decision to accord relatively little weight to their opinions was substantially supported by the evidence and not contrary to governing legal standards.

---

[5] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).
[6] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).
[7] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).
[8] *Id.*
[9] *Id.* at 1115 (quotation and citation omitted).
[10] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

1        1.  <u>Dr. Angela Withers, School Psychologist</u>

2        Plaintiff argues that the ALJ failed to adequately consider a

3   November 3, 2015 IEP report of Plaintiff, which was completed in part

4   by school psychologist Angela Withers. ECF No 12 at 6-8. The report

5   indicated that Plaintiff suffered from Autism. AR 538-39. The ALJ gave

6   little weight to the report because it contradicted Doctor Thomas

7   Genthe's opinion, AR 513-523, and because the criteria used to determine

8   eligibility for special education is different than the criteria used

9   to evaluate adult disability. AR 28. Plaintiff argues that the report

10  should have been given significant weight because it constitutes a

11  medical opinion from an acceptable medical source. ECF No. 12 at 6-8.

12  The Commissioner contends that, because the IEP is not a formal medical

13  opinion, the ALJ properly gave the IEP little probative weight. ECF No.

14  14 at 15-17.

15       The Court finds that the ALJ assigned appropriate weight to the

16  November 3, 2015 IEP report because Dr. Withers was a non-examining

17  physician. There are three types of physicians: (1) those who treat the

18  claimant (treating physicians); (2) those who examine but do not treat

19  the claimant (examining physicians); and (3) those who neither examine

20  nor treat the claimant, but who review the claimant's file (non-treating

21  physicians). Non-treating physicians are generally afforded less weight

22  than treating or examining physicians.[11] Dr. Withers is considered a

23  non-treating physician in this case because Dr. Withers' relationship

24  with Plaintiff did not include medical treatment, but instead included

25

26  [11] *See* 20 C.F.R. § 404.1527(c)(2); *Holohan v. Massanari*, 246 F.3d 1195, 1201-
        02 (9th Cir. 2001).

determining Plaintiff's eligibility for special education services.[12] The IEP report itself states: "this is [Plaintiff's] triennial reevaluation for special education services." AR 534. Therefore, the ALJ appropriately gave it less weight than the opinion of Dr. Genthe, an examining physician. AR 28, 513–23.

Further, the IEP report is not a medical opinion.[13] Medical opinions are created by acceptable medical sources and reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and the claimant's physical or mental restrictions.[14] School psychologists are "acceptable medical sources,"[15] but the IEP report is an educational report used to assess special education eligibility. AR 534. Further, it was prepared by not only Dr. Withers, but also by non-acceptable medical sources: two special education teachers and an assistant principal.[16] AR 534–40.

As set forth above, the ALJ's decision to accord relatively little weight to the November 3, 2015 IEP report was substantially supported by the evidence and not contrary to governing legal standards.

---

[12] An acceptable medical source is not considered a treating source "if [the] relationship with the source is not based on [a] medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability...In such a case, [the] acceptable medical source [is considered] a nontreating source." 20 C.F.R. § 416.927(a)(2).
[13] *Johnson v. Astrue*, No. EDCV 07-01694-MLG, 2008 WL 4553141, at *3–4 (C.D. Cal. Oct. 9, 2008)(unpublished).
[14] *See* 20 C.F.R. § 416.927(a)(1).
[15] 20 C.F.R. § 416.927(a)(1); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).
[16] *Jamerson v. Chater*, 112 F.3d 1064, 1066–67 (9th Cir. 1997).

1          2.   <u>Laurie Price, Teacher</u>

2          Plaintiff argues that the ALJ failed to adequately consider the

3    opinion of his special education teacher, Laurie Price. ECF No 12 at 8–

4    10. AR 524–31.

5          The ALJ's gave sufficient reasons for giving Ms. Price's opinion

6    less probative weight. A special education teacher is not considered an

7    acceptable medical source,[17] rather, special education teachers are

8    considered "other sources."[18] "Other source" testimony regarding a

9    claimant's symptoms or how an impairment affects his or her ability to

10   work is competent evidence, and if the ALJ is to discount it, the ALJ

11   must provide "reasons that are germane to [the] witness." [19]

12         First, the ALJ concluded that Ms. Price's opinion was "more

13   extreme" than the opinion of Dr. Genthe, an examining physician. AR 28–

14   29. An ALJ may discount an "other source" opinion if it is inconsistent

15   with the opinion of an acceptable medical source.[20] Substantial evidence

16   supports this finding; Ms. Price opined that Plaintiff had marked or

17   extreme limitations in a number of vocational areas, including

18   understanding and memory, sustained concentration and persistence,

19   social interaction, and adaption. AR 528–29. She further added that

20   Plaintiff would be off-task over 30% of the workday. AR 530. This

21   directly contradicts Mr. Genthe's conclusions that Plaintiff's ability

22   to: (1) sustain attention, concentration, and exert mental control was

23   average; (2) recall verbal and visual information was average; (3) carry

24   _____

25   [17] *Jamerson*, 112 F.3d at 1066–67. *See* 20 C.F.R. § 416.927(a)(1).
     [18] *Tuerner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223–24 (9th Cir. 2010). *See*
          20 C.F.R. § 404.1513(d).
26   [19] *Tuerner*, 613 at 1223–24.
     [20] *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

out short, simple instructions was good; and (5) interact appropriately with the public, get along with coworkers, and receive criticism from supervisors was unimpaired. AR 521-22.

The ALJ also concluded that Ms. Price's opinion was inconsistent with the opinion of Dr. Anita Peterson. AR 28-29. Dr. Peterson opined that Plaintiff was not significantly limited in his ability to understand, remember, and carry out very short and simple instructions, or in his ability to work in coordination with others without being distracted by them. AR 103-04. She further concluded that Plaintiff is moderately limited in his ability to perform activities within schedule, sustain an ordinary routine without supervision, and maintain socially appropriate behavior. AR 103-04.

Therefore, the ALJ provided germane reasons, supported by substantial evidence, for giving Ms. Price's opinion less probative weight.

### 3.   Elizabeth Burgess, Teacher

Plaintiff argues that the ALJ failed to adequately consider the opinion of Plaintiff's other special education teacher, Elizabeth Burgess. ECF No 12 at 10-11.

As stated, the ALJ may discount testimony from an "other source"[21] so long as he provides "reasons germane" for doing so.[22] The ALJ provided four sufficient reasons: (1) her opinion was inconsistent with Plaintiff's test scores; (2) her conclusions were inconsistent with Plaintiff's daily activities; (3) she assessed Plaintiff using the

---

[21] Jamerson, 112 F.3d at 1066-67.
[22] *Tuerner*, 613 F.3d at 1223-24.

domains for childhood disability; and (4) she only observed the Plaintiff for one hour per month during the year of evaluation. AR 27.

Ms. Burgess opined that Plaintiff had difficulties in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself, AR 351–58, which the ALJ found contradicted Plaintiff's test results. AR 27. An ALJ may discount an opinion that is inconsistent with test results.[23] As stated, Dr. Genthe concluded that Plaintiff displayed average verbal comprehension, reasoning, working memory, and low-average processing speed. AR 513–23.

Second, the ALJ found that Plaintiff's activities contradicted Ms. Burgess' opinion. AR 27. An ALJ may discredit an "other source" opinion based on its inconsistency with a claimant's daily activities.[24] While Ms. Burgess opined that Plaintiff had a serious problem making friends, AR 354, Plaintiff volunteered in a medical center playing with children, played video games with friends, and hung out with friends in school and church. AR. 27, 515.

Third, Ms. Burgess' opinion was in the form of a teacher's questionnaire and assessed Plaintiff using the domains more consistent with assessing childhood disability rather than adult disability.[25] AR

---

[23] *Britton*, 787 F.3d at 1013; *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (upholding the ALJ's rejection of medical opinion because it was inconsistent with neuropsychological testing).
[24] *Britton*, 787 F.3d at 1013–14.
[25] 20 C.F.R. § 416.913(a)(2)(i) ("[M]edical opinions in adult claims are about impairment-related limitation and restrictions in…" your ability to perform physical and demands of work activities, ability to adapt to environmental conditions, such as temperature extremes or fumes). *Cf*. 20 C.F.R. § 416.913(a)(2)(ii) ("Medical opinions in child claims are about acquiring and using information, attending and completing task, interacting with others, moving and manipulating objects, caring for yourself, and physical well-being.").

27, 351. Finally, the ALJ noted that Ms. Burgess spent only a limited time with Plaintiff after he turned eighteen. AR 27.

Therefore, the ALJ provided germane reasons, supported by substantial evidence, for giving Ms. Burgess' opinion little probative weight.

### 4. Mr. Grief, Teacher

Plaintiff argues that the ALJ failed to adequately consider the opinion of another teacher, Mike Grief. ECF No. 12 at 11-12.

The ALJ provided a sufficient reason to discount the opinion—Mr. Grief's opinion did not comport with Plaintiff's daily activities.[26] AR. 28. In a teacher's questionnaire, Mr. Greif opined that Plaintiff had a serious problem focusing long enough to finish an assigned activity or task, working at a reasonable pace, working without distracting himself or others, and expressing ideas in written form. AR. 320-21. He further opined that Plaintiff had some difficulty in areas related to acquiring and using information, interacting with others, and caring for himself. AR. 320-24. The ALJ reasonably concluded that his opinion was inconsistent with Plaintiff's demonstrated skills in that area, including his ability to make, edit, and post over 300 YouTube videos. Ar. 28, 59, 319. These skills indicate that Plaintiff had a greater ability to focus and complete tasks, work without distraction, and acquire and use information than alleged.

---

[26] *Tuerner*, 613 F.3d at 1223-24; *Jamerson*, 112 F.3d at 1066-67; *Britton*, 787 F.3d at 1013. *See* 20 C.F.R. § 416.927(a)(1).

**B.   The ALJ Did Not Improperly Reject Lay Witness Testimonies**

An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.[27] The ALJ proffered sufficient reasons for discounting the statements of Plaintiff's mother, grandmother, and family friend.

Plaintiff's mother, Kathy B., appeared at the hearing and testified that Plaintiff had emotional outbursts and difficultly staying on task without reminders. AR 61–63. In her opinion, Plaintiff did not have the ability to live independently and had only one friend who did not tolerate him well. AR at 64–70. She also noted that Plaintiff's speech issues had worsened due to his need for oral surgery. AR. 70–71. The ALJ concluded that Plaintiff's mother's testimony was inconsistent and that she neglected to bring up certain details. AR 29.

Plaintiff's grandmother, Linda Einspahr, provided a third-party statement. AR 548. Ms. Einspahr noted that Plaintiff struggles with changes in routine and accepting consequences, needs regular reminders to complete daily tasks, has emotional meltdowns, self-isolates, and has difficulty discerning between serious and humorous situations. AR 548. She also noted his speech difficulties. AR 548. The ALJ concluded that Ms. Einspahr's description portrayed an individual with some functional limitations, but not one who is completely disabled. AR 29.

Family friend Robin Mitchell also provided a third party statement recounting Plaintiff's numerous meltdowns, difficultly transitioning,

---

[27] *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

inability to follow a set plan of action, and inappropriate behavior at his volunteer jobs. AR 550. The ALJ gave the opinion little weight because the alleged behaviors were not further described. AR 30.

Therefore, the ALJ provided germane reasons, supported by substantial evidence, for giving Plaintiff's mother, grandmother, and Robin Mitchell's opinions less probative weight.

**C.** **The ALJ Did Not Err by Rejecting Plaintiff's Subjective Symptom Complaints.**

Plaintiff asserts that the ALJ erred by discrediting Plaintiff's subjective symptom testimony. ECF No. 12 at 16–18.

Plaintiff alleges that he cannot work because of deficits related to Autism/Asperger's syndrome, learning disorder, and affective disorder. ECF No. 12 at 2. At his hearing, Plaintiff testified that he needs constant reminders to complete household chores and self-care activities due to forgetfulness. AR 46–47.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[28] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[29] An ALJ must make sufficiently specific findings

---

[28] *Molina*, 674 F.3d at 1112.

[29] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

"to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."[30] General findings are insufficient.[31] However, courts may not second-guess ALJ findings that are supported by substantial evidence.[32]

In making an adverse credibility determination, an ALJ may consider, among other things, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity, and effect of the claimant's condition.[33]

The ALJ found that Plaintiff's medically determinable impairments could be reasonably expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent. AR 25. The ALJ provided three reasons for discounting Plaintiff's symptom testimony: (1) Plaintiff's daily activities undermined the alleged severity of his learning disorder, Asperger's syndrome, and depression; (2) Plaintiff inadequately explained lack of treatment; (3) the opinion and medical findings of Plaintiff's examining physicians contravened Plaintiff's allegations. AR 24-26.

First, the ALJ found that Plaintiff's daily activities undermined his subjective symptom complaints. AR 25-26. The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding

---

[30] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted).
[31] *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir 1995).
[32] *Id.*
[33] *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."[34] To that end, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest of take medication."[35] Accordingly, a claimant's daily activities should not have a negative impact on credibility unless those activities contradict the claimant's other testimony or are transferable to a work setting.[36]

The ALJ concluded that Plaintiff's allegations of Autism/Asberger's syndrome and depression were contradicted because Plaintiff graduated high school with mostly A's and B's, AR 48, 50–51, plans to attend college, AR. 48, plays video games and has made hundreds Youtube videos, AR 59, and does household chores with reminders. AR 25–26, 46. The ALJ concluded that these activities reflect that any difficulties claimant faces do not preclude work activities as an adult. AR 25. The ALJ also noted that, despite allegations of severe social limitations, Plaintiff engaged in volunteer work through a school program and volunteered at a medical center. AR 25–26, 43–44, 514. Plaintiff also attended church regularly and spent time with friends in school. AR 26, 515.

Second, the ALJ found that Plaintiff inadequately explained his lack of treatment, which undermined the reliability of his symptom

---

[34] *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).
[35] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).
[36] *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

testimony. AR 26. An ALJ may reject symptom testimony "if the level or frequency of treatment is inconsistent with the level of complaints[.]"[37] The ALJ considered that Plaintiff's lack of treatment may be due to financial restraints, AR 26, but the ALJ also pointed out Plaintiff's own statements: Plaintiff stated that the only reason he was unable to sustain full-time employment was the fact that he had, until recently, been in school. AR 26, 515. Plaintiff also denied a history of significant medical problems. AR 26, 513-14.

Finally, the ALJ found that the opinions and medical findings of Plaintiff's examining physicians contravened allegations of disabling symptoms and limitations. AR 26. An ALJ may discount a claimant's symptom testimony that is unsupported by medical opinion evidence and examination findings.[38] Dr. Peterson acknowledged Plaintiff alleged a history of autism, but noted that there was no record for its diagnosis. AR 101.[39]

The ALJ provided specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony supported by substantial evidence in the record. The ALJ therefore did not err in making an adverse credibility finding as to Plaintiff's symptom testimony.

---

[37] *Molina*, 674 F.3d at 1113 (citations omitted).
[38] *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (explaining that medical evidence is a relevant factor in determining the severity of the claimant's pain and its disabling effects).
[39] AR 101 ("ASD/Autism dx is alleged, but if such a dx wad made, no record exists. The label has been carried forward in school records, whether appropriate or not.")

**D.    The ALJ Did Not Improperly Reject Plaintiff's Severe Impairment.**

Plaintiff alleges that the ALJ erred by discrediting Plaintiff's severe impairment of Autism/Asberger's Syndrome. ECF No. 12 at 16–18.

At step two, the claimant has the burden to show that he has a medically severe impairment or combination of impairments.[40] The ALJ will only find an impairment to be severe if it "significantly limits [Plaintiff's] physical or mental ability to do basic work activities."[41] "An impairment is considered 'not severe' if it is a slight abnormality that causes no more than minimal limitations in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner."[42] If the ALJ erred in failing to find a condition to be a severe impairment, the Ninth Circuit has held that the error is harmless when the ALJ considers the limitations posed by the alleged conditions at a later step.[43]

Because the ALJ resolved step two in Plaintiff's favor and considered the limitations that Plaintiff alleged related to Autism/Asperger's syndrome later in the sequential evaluation, AR 26, any error was harmless. The ALJ concluded that Plaintiff's Autism/Asperger's syndrome was not a severe impairment, AR 23, and cited Dr. Genthe's opinion, which did not identify Asperger's syndrome or Autism. AR 23, 101, 513–23. However, the ALJ found that Plaintiff did have severe impairments: learning and affective disorders. AR 23. The

---

[40]  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).
[41]  20 C.F.R. § 416.920(c).
[42]  SSR Pub. No. 96-30; 20 C.F.R. § 916.920(c).
[43]  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *See also Buck v. Berryhill*, 869 F3d 1040, 1049 (9th Cir 2017) (finding any error at step two harmless because step two was resolved in claimant's favor).

1  ALJ accounted for the limitations that Plaintiff alleges are related to

2  his Autism/Asperger's syndrome by restricting Plaintiff to only

3  occasional contact with co-workers, occasional changes in the work

4  environment, and work emphasizing dealing with things/objects rather

5  than people. AR 24.[44]

6  **E.    The ALJ Did Not Err by Finding Plaintiff Did Not Meet a Listing.**

7      Plaintiff argues the ALJ erred by finding Plaintiff did not meet

8  a listing. AR 23-24. Plaintiff asserts that proper consideration of the

9  medical opinion evidence warrants a finding that Plaintiff meets or

10  equals Listings 12.04, 12.05, and 12.10. ECF No. 12 at 13.

11      At step three, the ALJ determines if a claimant's impairment meets

12  or equals an impairment listed in Appendix 1 to Subpart P of Regulations

13  No. 4. The Listing of Impairments describes specific impairments of each

14  of the major body systems "which are considered severe enough to prevent

15  a person from doing any gainful activity."[45] If a claimant meets or

16  equals a listed impairment he or she will be found disabled at this step

17  without further inquiry.[46]

18      The medical opinion evidence in the record indicates that Plaintiff

19  is able to work: both of Plaintiff's examining physicians opined that

20  Plaintiff was not disabled. Ar. 101-06, 521-22. Accordingly, the ALJ's

21  finding that Plaintiff did not meet listing 1.02, AR 22, was supported

22  by substantial evidence.

23

---

24  [44] Further, even if the ALJ did not account for the impairments alleged by
    Plaintiff to their full severity, for the reasons outlined above, the ALJ

25  properly weighed the opinions of Dr. Withers, Ms. Price, Ms. Burgess, and
    Mr. Grief. The ALJ's determination of Plaintiff's impairments and their

26  severity were properly supported by substantial evidence in the record.
    [45] *See* 20 C.F.R. § 404.1525.
    [46] *See* 20 C.F.R. § 404.1520(d).

**F.  The ALJ Did Not Fail to Meet His Step Five Burden.**

At step five, the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite their identified limitations.[47] At an administrative hearing, an ALJ may solicit vocational expert (VE) testimony as to the availability of jobs in the national economy.[48] A VE's testimony may constitute substantial evidence of the number of jobs that exist in the national economy.[49] The ALJ's decision regarding the number of alternative occupations must be supported by substantial evidence.[50]

Plaintiff argues that the ALJ's hypothetical failed to take into account the limitations set forth by Dr. Withers, Ms. Price, Ms. Burgess, and Mr. Grief. AR 30, 76–81. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[51]

**G.  The ALJ Did Not Improperly Fail to Award the Claimant Child Disability Benefits Through December 13, 2013.**

Plaintiff argues that a child may continue to receive child benefits until age nineteen if he is still a student in high school or equivalent education program. ECF No. 12 at 19.

---

[47] *Johnson v. Shalala*, 50 F.3d 1428, 1432 (9th Cir. 1995). *See* 20 C.F.R. § 416.920(g).
[48] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 2011).
[49] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).
[50] *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013)(unpublished). *See Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).
[51] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

A child may continue to receive child benefits until age 19 if still a student in high school.[52] However, this rule applies to children who receive social security dependents benefits or disabled adult children benefits, and it is thereby inapplicable to the case at hand.[53] The ALJ determined that Plaintiff was not disabled as of his eighteenth birthday, pursuant to Section 1614(a)(3)(H)(iii) of the Social Security Act.[54] AR 31.

### IV.   Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** for Plaintiff.

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.**   The Clerk's Office is directed to file this Order, enter Judgment for Plaintiff, provide copies to all counsel, and close the file.

**DATED** this ___18th_ day of September 2018.


_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge

---

[52] POMS RS 00205.325; SSA Pub. No. 05-10085.
[53] *See* POMS RS 00205.001 (stating that eligibility for student benefits); RS 00203.001 ("child benefits include benefits for minor children, students, and disabled adult children."); RS 00203.080 (definition of disability for child disability benefits is the same as for disability insurance cases: an inability to engage in any substantial gainful activity).
[54] 42 U.S.C. § 1382c(a)(3)(H)(iii).